**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1296

In Re:  THE BANKRUPTCY ESTATE OF AGS, INC.,

Petitioner.

On Petition for Writ of Mandamus.
(1:12-cr-00113-IMK-JSK-1)

Submitted: April 2, 2014          Decided:  April 4, 2014

Before TRAXLER, Chief Judge, and WILKINSON and MOTZ, Circuit Judges.

Petition denied by unpublished per curiam opinion.

Patrick S. Cassidy, CASSIDY, MYERS, COGAN & VOEGELIN, LC, Wheeling, West Virginia; Martin Patrick Sheehan, SHEEHAN & NUGENT, PLLC, Wheeling, West Virginia, for Petitioner. Robert G. McCoid, MCCAMIC, SACCO, PIZZUTI & MCCOID, PLLC, Wheeling, West Virginia; Andrew R. Cogar, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Respondents.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The bankruptcy estate of AGS, Inc. has petitioned for a writ of mandamus pursuant to 18 U.S.C. § 3771(d). It seeks to require defendant Allen G. Saoud to pay it restitution following his conviction on multiple counts of health care fraud and other associated charges. See United States v. Saoud, Criminal Case No. 1:12-CR-113 (pending N.D. W. Va.) (Keely, J.). Petitioner contends that it was a victim under the Mandatory Victims' Restitution Act, 18 U.S.C. § 3663A, and is entitled to a restitution award of more than $1 million. For the reasons that follow, we deny the petition.[*]

I.

Allen G. Saoud was convicted after a June 2013 jury trial of thirteen counts of health care fraud and several other offenses. According to the evidence presented at trial, the defendant, who is a dermatologist, was excluded in 2005 from participating in Medicare and Medicaid for a period of ten years. He then hatched a plan to maintain ownership and control of his dermatology practice, AGS Inc. ("AGS") in violation of the exclusion. To execute this fraudulent scheme, he founded a new dermatology practice, to which he transferred all of his

---

[*] We grant petitioner's motion to proceed on the original record with an abbreviated appendix.

2

patients. He then fraudulently sold this practice to Dr. Fred Scott for $1.8 million. He then sold AGS, which had lost its value, for $1 million to nurse practitioner Georgia Daniel. After these sales, he continued to control and profit from both entities, partly by collecting Medicare and Medicaid reimbursement funds. The defendant never told his staff of his exclusion from Medicare and Medicaid during this time.

After the defendant was convicted, petitioner sought a restitution award of more than $1 million to cover bankruptcy claims by Highmark West Virginia, Inc. ("Highmark"), the West Virginia State Tax Department, as well as petitioner's attorneys' fees. The validity of these bankruptcy claims was not discussed in the government's case against the defendant at trial. Highmark alleges that multiple AGS doctors had overbilled it from 2000 to early 2006. The state of West Virginia claims that AGS owed it tax payments from the tax years 2000 to 2004. The district court declined to award petitioner its desired restitution, and this petition followed.

II.

A.

Typically writs of mandamus are subject to a stringent standard of review, requiring that "a petitioner must show that he has a clear and indisputable right to the relief sought and there are no other adequate means to attain the relief he

3

desires." In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d 283, 289 (4th Cir. 2013) (internal quotation marks omitted). Our sister circuits have disagreed about whether this demanding standard applies to mandamus petitions filed under § 3771 or if instead traditional appeal standards apply. Compare, e.g., United States v. Fast, 709 F.3d 712, 718 (8th Cir. 2013) and In re Antrobus, 519 F.3d 1123, 1124-25 (10th Cir. 2008) (applying the mandamus standard of review) with Kenna v. U.S. Dist. Court for C.D.Cal., 435 F.3d 1011, 1017 (9th Cir. 2006) and In re W.R. Huff Asset Mgmt. Co., LLC, 409 F.3d 555, 563 (2d Cir. 2005) (applying the standards applicable to ordinary appeal). We have left the issue open. See In re Brock, 262 F. App'x 510, 512 (4th Cir. 2008). We need not decide this question here. It is sufficient simply to note that to issue a writ of mandamus to a district court is not something to be undertaken lightly.

B.

The petitioner claims that it is due restitution under the Mandatory Victims' Restitution Act ("MVRA"), 18 U.S.C. § 3663A. The statute defines a "victim" as: "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including . . . any person directly harmed by the defendant's criminal conduct in the course of [a] scheme, conspiracy, or pattern." Id.

4

§ 3663A(a)(2). We have noted that under the MVRA, "alleged victims must be the victims of the offense of conviction." United States v. Freeman, 741 F.3d 426, 435 (4th Cir. 2014) (emphasis in original). In order to determine whether there is an adequate connection between the alleged victim's losses and the defendant's specific conduct, "we look to the elements of the offense of conviction and the specific conduct underlying these elements." Id. at 437. An examination of the trial record makes clear that petitioner does not qualify as a victim for purposes of the MVRA.

The elements of health care fraud require a person to knowingly and willfully execute or attempt to execute a scheme to (a) defraud a health care benefit program; or (b) fraudulently obtain property or money owned or under the custody or control of any health care benefit program. See 18 U.S.C. § 1347. The second superseding indictment ("indictment") specifically alleged in counts one through five -- all five of which the defendant was convicted -- that the defendant knowingly devised a scheme intended to defraud Medicare and Medicaid and to fraudulently obtain the programs' money and property. See J.A. at 28. And elsewhere in the indictment, the government alleged that the defendant used AGS as an instrument in his scheme to illegally obtain Medicare and Medicaid funds. See id. at 29-30. It is clear that the scheme was aimed at

5

defrauding these federal programs. AGS was one of the means through which the defendant perpetrated the fraud upon them. We decline to also hold that AGS was one of the scheme's victims.

Meanwhile, the damage suffered by AGS's creditors from defendant's fraudulent activity can at best be described as tangential to the scheme to defraud Medicare and Medicaid that is the basis for restitution. As noted above, the statute and our precedents require direct or proximate harm from the offenses of conviction. To the extent that AGS's creditors are harmed because they must expend funds in an attempt to prevail in the bankruptcy proceedings, that damage cannot be said to be adequately related to the defendant's health care fraud to qualify under the MVRA. See United States v. Abdelbary, 13-4083, 2014 WL 929422 at *7 (4th Cir. Mar. 11, 2014) (noting that, generally, legal fees paid to recover lost property are not direct and proximate losses that can be recovered through restitution). Instead, this harm is tangential to the substantive counts of health care fraud from which the restitution flows.

In addition, the vast majority of the loss claimed by the creditors is antecedent to the fraud charged in the case. Highmark's claims for alleged overbilling by AGS doctors date from 2000 to early 2006, while the state tax claims date from the tax years 2000 to 2004. The health care fraud for which the

6

defendant was charged and convicted, meanwhile, began in 2005. Thus, if in fact the petitioner's claims regarding false billings and underpayment of taxes are valid, they stem almost exclusively from AGS's conduct before defendant engaged in his fraudulent behavior. Finally, it is not clear that the defendant's conduct was detrimental to AGS; the government posits that the fraud may in fact have provided AGS more assets with which to pay its bills. See Freeman, 741 F.3d at 438 (requiring for restitution a showing that absent the fraud, the same harm would not have befallen the victims).

## III.

For the foregoing reasons, we find that the district court did not err in denying restitution to the bankruptcy estate of AGS and we deny the petition for a writ of mandamus.

PETITION DENIED

7