PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 13-4083

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

YOUSSEF HAFEZ ABDELBARY,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Samuel G. Wilson, District Judge.  (7:10-cr-00067-SGW-1)

———————

Argued: December 12, 2013        Decided: March 11, 2014

———————

Before TRAXLER, Chief Judge, and DIAZ and FLOYD, Circuit Judges.

———————

Affirmed by published opinion.  Chief Judge Traxler wrote the majority opinion, in which Judge Floyd joined.  Judge Diaz wrote a dissenting opinion.

———————

**ARGUED:** Paul Graham Beers, GLENN, FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellant.  Joseph W.H. Mott, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.  **ON BRIEF:** Timothy J. Heaphy, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

———————

TRAXLER, Chief Judge:

Youssef Abdelbary appeals a district court order requiring him to pay restitution as part of his sentence for bankruptcy fraud. Finding no error, we affirm.

## I.

Abdelbary was convicted of wire fraud, money laundering, currency structuring, bankruptcy fraud, and perjury. This is the second appeal in this case, and many of the facts relevant to this appeal are set out in our first decision. See United States v. Abdelbary, 496 Fed. App'x 273, 2012 WL 5352515 (4th Cir. 2012).

### A.

Youssef Abdelbary owned and operated a gas station and convenience store in Dublin, Virginia. Abdelbary leased the property and bought the gas he sold from Jordan Oil. While running this business, Abdelbary used a branch of the Carter Bank and Trust in Christiansburg, Virginia, where he made more than one hundred transactions, each involving more than $10,000. At the time of the first deposit of this size, Ralph Stewart, a local manager for Carter Bank and Trust, explained to Abdelbary about the currency transaction reports ("CTRs") that had to be filed on a transaction involving more than $10,000.

Abdelbary's relationship with Jordan Oil grew contentious in late 2007 and early 2008. When Abdelbary failed to make a payment due to Jordan Oil in early February 2008 for gas it had delivered, Jordan Oil ceased its deliveries to Abdelbary. Jordan Oil sued soon thereafter to collect the money that Abdelbary owed, which totaled about $250,000. The following day, Abdelbary began withdrawing currency in amounts less than $10,000. Over the next eight days, Abdelbary withdrew $59,879.31 from his account in

2

eleven transactions. The litigation against Jordan Oil continued through the spring of 2008. Eventually, at the end of May, this litigation concluded when Jordan Oil obtained a final judgment against Abdelbary for $247,759.79 and Abdelbary's counterclaim was dismissed.

The next month, Abdelbary engaged in a series of credit card transactions in which he charged his personal credit cards at his store in multiple equal amounts in a span of a few minutes. The value of these purchases was credited to the account at Carter Bank and Trust that Abdelbary used for his business, and he then withdrew this money, totaling $52,350, from that account in amounts less than $10,000.

Abdelbary met with a bankruptcy attorney in July 2008. Abdelbary initially told this bankruptcy attorney that he wanted to get back at Jordan Oil, but Abdelbary eventually concluded that he would file for bankruptcy. When Abdelbary submitted his bankruptcy filing, he denied having made any gifts within one year or having transferred any property within two years of the filing. Additionally, Abdelbary stated at the bankruptcy creditors' meeting that he had not transferred any assets to a family member. Despite these statements, Abdelbary had sent $76,000 to his brother in Egypt during those previous two years.[1]

B.

Based on these events, Abdelbary was charged in a twenty-count indictment with wire fraud, 18 U.S.C. § 1343, money laundering, 18 U.S.C. § 1956(a)(1)(B)(i) and (ii), currency structuring, 31 U.S.C. § 5324(a)(1) and (3) and § 5324(d), bankruptcy fraud, 18 U.S.C. § 152(3), and perjury, 18 U.S.C. § 1623. A jury convicted Abdelbary on all counts.

After the jury returned its verdict, the district court granted Abdelbary's Rule 29 motion for judgment of acquittal on the wire fraud and money laundering counts. The district court read the indictment as requiring the Government to prove beyond a reasonable

---

[1] The bankruptcy court eventually denied Abdelbary's Chapter 7 petition.

3

doubt that Abdelbary incurred the credit card charges in June 2008 with the intention of filing for bankruptcy and thus not repaying those companies. The district court held that the Government had not met this burden and therefore dismissed those counts of the indictment.

At sentencing, the district court sentenced Abdelbary to twenty-four months in prison. The court entered a criminal forfeiture judgment against Abdelbary for $112,229.31 and also ordered Abdelbary to pay restitution to Jordan Oil of $84,079.35 for attorney's fees incurred during the bankruptcy proceeding. The district court cited both the voluntary, 18 U.S.C. § 3663, and mandatory, 18 U.S.C. § 3663A, restitution provisions during the hearing without ever specifying the provision on which it was relying.

Id. at 274-75 (footnote omitted).

On appeal, we affirmed Abdelbary's conviction for currency structuring, reversed the judgment of acquittal on the wire fraud and money laundering convictions, and remanded for reinstatement of the jury verdict and entry of the judgment against Abdelbary. See id. at 279. Additionally, we vacated the restitution award and remanded for further proceedings, holding that the district court had not specified whether the award was pursuant to the Victim and Witness Protection Act ("VWPA"), see 18 U.S.C. § 3663, or the Mandatory Victim Restitution Act ("MVRA"), see 18 U.S.C. § 3663A, and the court had overlooked making the factual findings required by the appropriate act. See Abdelbary, 496 Fed. App'x at 279.

4

On remand, the district court sentenced Abdelbary to 27 months' imprisonment. The parties disagreed, as they did during Abdelbary's first sentencing, regarding whether Abdelbary should be required, as part of his sentence for the bankruptcy fraud offenses, to make restitution to Jordan Oil for the attorneys' fees it incurred in the bankruptcy proceeding. The parties agreed that the MVRA governs the question. See 18 U.S.C. § 3663A(c)(1)(A)(ii) (providing that MVRA applies to "an offense against property under this title . . ., including any offense committed by fraud or deceit"). The district court found as a factual matter that the attorneys' fees at issue "were incurred as a result of the bankruptcy fraud," J.A. 523, and Abdelbary did not dispute that point. However, Abdelbary argued, as he had during his initial sentencing, that Jordan Oil could not recover its attorneys' fees incurred in the bankruptcy proceeding as part of restitution. Abdelbary maintained that attorneys' fees could never be included as compensable costs as part of restitution under the MVRA. He alternatively argued that attorneys' fees were not includable based on the facts of this case as Jordan Oil was not a victim of Abdelbary's offense since Abdelbary failed in his attempt to discharge his debts in bankruptcy. Abdelbary maintained that Jordan Oil's incurrence of attorneys' fees was at most a consequential loss, not a

5

direct one, and thus the fees were not compensable as part of restitution.[2]

The government disagreed and urged the district court to again require Abdelbary to pay Jordan Oil restitution in the amount of the attorneys' fees it incurred as a result of Abdelbary's bankruptcy fraud offenses. The government denied that there was any sort of "blanket prohibition against attorneys' fees as a class of expense" and argued that they were includable as part of restitution so long as they resulted directly from the crime. J.A. 525. The government asserted that Jordan Oil's fees resulted directly and proximately from the bankruptcy fraud because Jordan Oil incurred the fees defending its rights in the same proceeding – Abdelbary's

---

[2] A question has been raised as to whether Abdelbary argued during resentencing that the district court had failed to find but-for causation. See post, at 23 n.2 (citing J.A. 525-26, 528-29). But the district court noted during resentencing that it had already found during the first sentencing "that these attorney fees were incurred as a result of the bankruptcy fraud." J.A. 523. Abdelbary offered no challenge whatsoever to that determination. In the above-cited pages of the joint appendix, Abdelbary simply argued that the attorneys' fees were consequential, rather than direct, damages. See J.A. 525-26 ("[W]e do not concede that Jordan Oil is even a victim for mandatory restitution purposes, because the victim has to be the direct victim of the alleged offense. They're not the direct victim . . . . I think if there's a victim there, Judge, it's the bankruptcy trustee, not Jordan Oil."); J.A. 528-29 ("Mullins says that consequential damages, such as attorneys' fees, are not recoverable. . . . [The fees are] not a direct damage. As a matter of law, that's a consequential damage. . . . They're trying to get attorneys' fees; that's a remote, inconsequential damage. That's not an intended – a direct loss.").

bankruptcy – in which the fraud occurred. In other words, the position of the government was that in order to avoid paying Jordan Oil and its other creditors, Abdelbary tried to hide his money, assert insolvency, and file for bankruptcy. Jordan Oil was then forced to obtain legal representation to keep its claim against Abdelbary alive. As the bankruptcy proceedings progressed, Abdelbary persisted in his lies about his assets and what he had done with his money. The lies he told became the bases for his convictions for bankruptcy fraud and required the continuation of the bankruptcy proceedings that caused Jordan Oil's litigation expenses to reach $84,079.35. The government distinguished the facts of the present case from those in which a victim suffers a loss and then sometime later incurs attorneys' fees attempting to recover from the defendant.

The district court rejected Abdelbary's arguments, agreed with the government, and again ordered Abdelbary under the MVRA to pay $84,079.35 to Jordan Oil in restitution, representing the amount of the legal fees Jordan Oil incurred during bankruptcy proceedings. The district court found that the attorneys' fee expenditures "were directly and proximately caused" by Abdelbary's bankruptcy fraud insofar as Jordan Oil incurred the fees defending its rights in the very same proceeding in which the bankruptcy fraud occurred. J.A. 534. The district judge specifically stated that "I'm not thinking of this as fee-

7

shifting.  I'm thinking of it as a direct harm from the filing of this.  As [the government] has indicated, [Jordan Oil was] essentially dragged into bankruptcy court."  J.A. 533-34.

## II.

Abdelbary now argues on appeal that the district court erred in requiring him to pay Jordan Oil's attorneys' fees incurred in the bankruptcy proceeding as part of restitution. We disagree.

In the sentencing context, we review findings of fact for clear error and questions of statutory construction de novo. See United States v. Moore, 666 F.3d 313, 320 (4th Cir. 2012). We review the application of the court's factual findings in this context for abuse of discretion.  See id.

Some background concerning the enactment of the VWPA and the MVRA is helpful to an understanding of the issue Abdelbary raises.  Although restitution has long been authorized at common law, there was no statutory authorization for requiring restitution as part of a criminal sentence outside of the probation context prior to the enactment of the VWPA, see S. Rep. No. 97-532, at 30 (1982); United States v. Amato, 540 F.3d 153, 159 (2d Cir. 2008).  Congress enacted the VWPA in 1982, see Pub. L. 97-291, 96 Stat. 1248 (currently codified at 18 U.S.C.

8

§ 3663).[3] Under the VWPA, as originally enacted, restitution could be made only to a "victim" of the offense of conviction and only for specified types of losses that were "caused by the specific conduct that is the basis of the offense of conviction." Hughey v. United States, 495 U.S. 411, 413 (1990).[4] Even concerning victims who have suffered the specified type of losses, the decision whether to order restitution under the VWPA is discretionary. See 18 U.S.C. § 3663(a)(1).

As originally enacted, the VWPA identified particular types of losses that could be included in restitution for certain types crimes involving damage to or loss or destruction of property, see 18 U.S.C. § 3663(b)(1), and other types of losses that could be included for crimes involving bodily injury, see 18 U.S.C. § 3663(b)(2), (3). In 1994, Congress added to the types of losses that could be included under the VWPA by adding subsection (b)(4). See Violence Against Women Act of 1994, Pub. L. No. 103-322, Title IV, § 40504, 108 Stat. 1796, 1947 (1994). That subsection provides that, for any type of crime,

---

[3] The VWPA was originally codified at 18 U.S.C. §§ 3579-80 but was later recodified so that § 3579 now appears as § 3663 and § 3580 now appears as § 3664. See Hughey v. United States, 495 U.S. 411, 413 n.1 (1990).

[4] "Federal courts do not have the inherent authority to order restitution, but must rely on a statutory source to do so." United States v. Davis, 714 F.3d 809, 812 (4th Cir. 2013) (internal quotation marks and alteration omitted).

9

restitution orders may be used to "reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663(b)(4).

In 1996, Congress enacted the MVRA as part of the Antiterrorism and Effective Death Penalty Act of 1996, see Pub. L. No. 104-132, 110 Stat. 1214 (1996). The MVRA made payment of restitution as part of a criminal sentence mandatory for certain categories of offenses that directly and proximately caused a victim to suffer either a physical or a pecuniary loss. See MVRA § 202, 110 Stat. at 1227; United States v. Squirrel, 588 F.3d 207, 212 (4th Cir. 2009). While the VWPA's substantive requirements are codified at 18 U.S.C. § 3663, the MVRA's are primarily set out at 18 U.S.C. § 3663A.[5] Section 3663A's structure mirrors that of § 3663, and much of § 3663A is identical or nearly identical to language in § 3663. Additionally, the MVRA amended § 3663's definition of "victim" to match the definition in § 3663A, which is, as is relevant here, "a person directly and proximately harmed as a result of

_____

[5] The procedure for imposing restitution under both statutes is set out in 18 U.S.C. § 3664. See 18 U.S.C. § 3556.

10

the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2); see 18 U.S.C. § 3663(a)(2).

Section 3663A(b), like its VWPA counterpart, § 3663(b), specifically identifies the types of losses includable in a restitution award under the MVRA. This appeal primarily concerns 18 U.S.C. § 3663A(b)(1), which provides:

> **(b)** The order of restitution shall require that such defendant–
>
> **(1)** in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense–
>
> **(A)** return the property to the owner of the property or someone designated by the owner; or
>
> **(B)** if return of the property under subparagraph (A) is impossible, impracticable, or inadequate, pay an amount equal to–
>
> **(i)** the greater of–
>
> **(I)** the value of the property on the date of the damage, loss, or destruction; or
>
> **(II)** the value of the property on the date of sentencing, less
>
> **(ii)** the value (as of the date the property is returned) of any part of the property that is returned . . . .

Here, the district court found that Jordan Oil was a "victim" of Abdelbary's offense because his offenses directly and proximately caused Jordan Oil to expend $84,079.35 for attorneys' fees, see 18 U.S.C. § 3663A(a)(2), such than an award in the amount of those fees was proper under subsection (b)(1).

11

On this basis, the court ordered Abdelbary to make restitution to Jordan Oil in that amount.

Abdelbary does not challenge the district court's determination that Jordan Oil incurred the attorneys' fees as a result of his bankruptcy fraud. Abdelbary maintains, though, that the restitution order was erroneous because attorneys' fee expenditures are never compensable under the MVRA as is demonstrated by our decision in United States v. Mullins, 971 F.2d 1138 (4th Cir. 1992).[6] We conclude, however, based on the

---

[6] Abdelbary also contends that the district court erred in concluding that Jordan Oil was a victim because the district court specifically found that Jordan Oil did not suffer an actual loss, within the meaning of the MVRA, as a result of the offense. See United States v. Harvey, 532 F.3d 326, 339 (4th Cir. 2008) (explaining that a restitution order must be based on a victim's actual loss). In support of his contention that the district court found no actual loss, Abdelbary points to page 5 of the amended judgment, wherein the court listed "$0.00" as Jordan Oil's "[t]otal [l]oss." J.A. 565. However, we conclude that the listing of "0.00" as Jordan Oil's total loss on the amended judgment at most amounted to an administrative error. The sentencing transcript makes clear that the district court actually found as a fact that Abdelbary's conduct underlying his offenses directly and proximately caused Jordan Oil to expend $84,079.35 in attorneys' fees. We therefore conclude that the notation on the amended judgment does not affect the validity of the restitution order. Cf. United States v. Osborne, 345 F.3d 281, 283 n.1 (4th Cir. 2003) ("It is normally the rule that where a conflict exists between an orally pronounced sentence and the written judgment, the oral sentence will control."); United States v. Morse, 344 F.2d 27, 30 (4th Cir. 1965) ("[W]e should carry out the true intention of the sentencing judge as this may be gathered from what he said at the time of sentencing.").

(Continued)

district court's findings, that the fees were includable under subsection § 3663A(b)(1).[7]

In Mullins, the defendant was convicted of aiding and abetting the commission of wire fraud, which involved obtaining $45,000 worth of kitchen equipment. See id. at 1140. The district court ordered the defendant to pay $42,500 in restitution as part of his sentence under the VWPA. See id. As is relevant here, the defendant argued that the amount improperly included consequential damages in the form of

---

We do not read page 13 of Abdelbary's opening brief to challenge the district court's failure to find but-for causation at sentencing. In our view, the cited page is simply part of Abdelbary's argument that Jordan Oil was not a "victim" within the meaning of the MVRA because the court's listing of "$0.00" as Jordan Oil's "[t]otal loss" constituted a factual finding that Jordan Oil suffered no loss as a result of the bankruptcy fraud. In the cited page of Abdelbary's brief, Abdelbary argues that a finding of no loss would not have been clearly erroneous because Jordan Oil's attorneys' fees were at most consequential, rather than direct, damages. See Appellant's Brief at 13 ("Abdelbary's goal was to obtain a judicial discharge of his indebtedness to Jordan Oil and other creditors. Causing Jordan Oil to incur attorney's fees was not an element of the offense. Jordan Oil's legal bills were at most an indirect consequence of Abdelbary's offense. . . . A restitution award may only compensate for a victim's actual damages resulting directly from an essential conduct element of the offense. Indirect losses and consequential damages are not compensable 'losses' under the MVRA." (emphasis added)). For the reasons explained in the remainder of our opinion, Abdelbary's argument is incorrect.

[7] Because we conclude that the fees were includable under subsection (b)(1), we do not address Abdelbary's argument that the district court correctly determined that the fees were not includable under subsection (b)(4).

13

attorneys' fees and other amounts expended by the equipment's owner in repossessing the equipment. See id. at 1146. In analyzing the scope of the losses includable in the restitution order, we observed that 18 U.S.C. § 3663(b)(1) – which is essentially identical to its MVRA counterpart[8] – described the amount of restitution the district court was authorized to award. See id. Construing this language, we concluded that "[i]n cases involving the damage, loss, or destruction of property, restitution must be limited to that which the statute authorizes: return of the property, or payment of the property's value, either on the date of damage or loss or on the date of

---

[8] 18 U.S.C. § 3663(b)(1) provides:

**(b)** The order may require that such defendant–

**(1)** in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense–

**(A)** return the property to the owner of the property or someone designated by the owner; or

**(B)** if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of–

**(i)** the value of the property on the date of the damage, loss, or destruction, or

**(ii)** the value of the property on the date of sentencing,

less the value (as of the date the property is returned) of any part of the property that is returned . . . .

14

sentencing, less the value of any part of the property that is returned." Id. at 1147. Regarding Mullins's consequential-damages argument, we "h[e]ld that an award of restitution under the VWPA cannot include consequential damages such as attorney's and investigators' fees expended to recover the property" that was the target of the crime. Id.

Abdelbary contends that Mullins is consistent with the "American Rule," under which each party is responsible for his own attorney's fees and the related rule that courts are not authorized to deviate from the American Rule unless an express contractual or statutory provision specifically provides for an attorneys' fee award. See Fox v. Vice, 131 S. Ct. 2205, 2213 (2011); Crescent City Estates, LLC v. Draper (In re Crescent City Estates, LLC), 588 F.3d 822, 825-26 (4th Cir. 2009). He claims that in light of Mullins and the American Rule, § 3663(b)'s MVRA counterpart, § 3663A(b), should not be construed to authorize the restitution ordered here. We disagree.

Initially, we note that the American Rule has no application here. That rule provides that "[i]n the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 247 (1975). But we are not reviewing a question of entitlement to

15

fee shifting as between parties to a case – that would be a matter for the bankruptcy court. Rather, what is before us is the separate question of what losses can be includable as part of criminal restitution. See United States v. Scott, 405 F.3d 615, 619 (7th Cir. 2005) ("The line between criminal restitution and common law damages is important to maintain."). In this context, there is no reason to presume that Congress intended to preclude the inclusion of amounts expended on attorneys' fees as part of restitution in the exceptional scenario in which the fees were the direct and proximate result of the defendant's crime.

Rather, this case is governed by the rule explained in United States v. Elson, 577 F.3d 713 (6th Cir. 2009):

> Generally, attorney fees incurred in civil litigation against the defendant for the same acts at issue in the criminal proceedings are consequential damages that are not recoverable. However, where a victim's attorney fees are incurred in a civil suit, and the defendant's overt acts forming the basis for the offense of conviction involved illegal acts during the civil trial, such as perjury, such fees are directly related to the offense of conviction and therefore are recoverable as restitution under the MVRA.

Id. at 728 (citation omitted); see also United States v. Havens, 424 F.3d 535, 539 (7th Cir. 2005) (holding that restitution under the MVRA for identity-fraud victim could include "[f]ees paid to counsel or other experts for dealing with the banks and credit agencies in the effort to correct her credit history and

16

repair the damage to her credit rating"). We note that this explanation of the applicable causation rule concerning the MVRA is in line with other circuits' applications of the VWPA as well. See United States v. DeGeorge, 380 F.3d 1203, 1221–22 (9th Cir. 2004) (holding that when the defendant's offense "included his perjury and other conduct during the civil trial" then "the insurance company's expenses in the civil trial were directly, not tangentially, related to [the defendant's] offenses" and thus includable as part of restitution under the VWPA); United States v. Mikolajczyk, 137 F.3d 237, 245-46 (5th Cir. 1998) (holding that when the filing of a fraudulent lawsuit is part of the offense, the "costs of defending the lawsuit were a direct and mandatory result of [the defendant's act], not a voluntary action taken . . . to recover property or damages" even though "[t]he VWPA does not generally authorize recovery of legal fees expended to recover stolen property"); see also Government of Virgin Is. v. Davis, 43 F.3d 41, 46 (3d Cir. 1994) (stating that "[t]he plain language of the VWPA, as well as the reasoning adopted by other courts of appeal, leads us to conclude that absent specific statutory authority for an award of attorneys' fees, the amount of restitution ordered under the VWPA may not include compensation for legal expenses unless such costs are sustained as a direct result of the conduct underlying the offense of conviction" (emphasis added)).

17

This rule is also entirely consistent with Mullins. That is so because the attorneys' fees the Mullins victim expended in an attempt to recover property taken earlier fall within the general rule that such fees are not the direct and proximate result of the defendant's criminal conduct but are merely consequential damages. In fact, an examination of exactly how the applicable statutory language applies to the facts in Mullins also reveals how the present case falls outside of the general rule that attorneys' fees are not includable.

Subsections 3663(b)(1) and 3663A(b)(1) apply "in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense." 18 U.S.C. §§ 3663(b)(1), 3663A(b)(1). And, to be a victim under § 3663 or § 3663A, an entity must be "directly and proximately harmed" by the defendant's offense. 18 U.S.C. §§ 3663(a)(2), 3663A(a)(2). In light of (a)(2)'s direct-and-proximate requirement, we have applied the same requirement in (b)(1) such that "the amount of any restitution due [the victim] under the MVRA is the amount of actual loss to [the victim] directly and proximately caused by [the defendant's] offense conduct." United States v. Wilkinson, 590 F.3d 259, 268 (4th Cir. 2010) (emphasis added). The property lost or destroyed in Mullins was the $45,000 in restaurant equipment, not the fees later incurred to recover the equipment. That is, the only loss directly and proximately

18

caused by the wire-fraud offense was the loss of the restaurant equipment, and restitution was thus permitted only as to that loss. Because the statute does not authorize restitution for consequential damages, the inclusion of the amount of attorneys' and investigators' fees expended to repossess the equipment were improper in Mullins.

In the present case, however, unlike in Mullins, the causal relationship the government sought to establish between the crime and the incurrence of the fees was not based simply on the fact that the fees were incurred to prevent harm from, or to remedy harm caused by, the defendant's criminal conduct. Rather, the government sought to prove that the fees incurred were directly and proximately caused by Abdelbary's bankruptcy fraud because the fraud occurred in the context of Abdelbary's bankruptcy proceeding and Jordan Oil incurred the fees defending its interests against Abdelbary's fraud in that same proceeding. See Elson, 577 F.3d at 728; DeGeorge, 380 F.3d at 1221-22; Mikolajczyk, 137 F.3d at 245-46. Since the offense directly and proximately caused Jordan Oil to incur the fees, the offense "result[ed] in damage to or loss or destruction of property of a victim of the offense," 18 U.S.C. § 3663A(b)(1) – the property being the money that Jordan Oil expended on the fees. Accordingly, the district court properly determined that the amount of attorneys' fees Jordan Oil incurred in the bankruptcy

19

case as a result of Abdelbary's offense is includable as restitution under the MVRA.  See 18 U.S.C. § 3663A(b)(1)(B).[9]

### III.

For the foregoing reasons, the district court's restitution order is affirmed.

AFFIRMED

---

[9] Abdelbary argues that the district court concluded that it had authority under subsections (a)(1) and (a)(2) of § 3663A to include the fees, but did not find that they were includable under subsection (b)(1).  That the district court did not specifically identify (b)(1) as the source of its authority is beside the point, however, as the court made the critical finding that Jordan Oil's incurrence of the fees was the direct and proximate result of Abdelbary's offense.

DIAZ, Circuit Judge, dissenting:

The majority concludes that attorneys' fees are recoverable as restitution under the MVRA "in the exceptional scenario in which the fees were the direct and proximate result of the defendant's crime." Maj. Op. at 16. Although I agree, in theory, that attorneys' fees may be part of an award of restitution under the statute, I take issue with the finding that all of the fees incurred by Jordan Oil were directly and proximately caused by Abdelbary's offense conduct. Such a conclusion takes too broad a view of what constituted Abdelbary's criminal offense.

The Supreme Court has instructed that "restitution as authorized by [the MVRA] is intended to compensate victims only for losses caused by the conduct underlying the offense of conviction." Hughey v. United States, 495 U.S. 411, 416 (1990) (emphasis added). In the context of crimes involving false statements, this court has noted that "Hughey and the text of the [MVRA] do not allow us to stretch the 'offense' involved in a perjury conviction to include any other conduct . . . to which the defendant's perjurious statement may have borne some relationship." United States v. Broughton-Jones, 71 F.3d 1143, 1149 (4th Cir. 1995); see also United States v. Blake, 81 F.3d 498, 506 (4th Cir. 1996) ("[T]he factual connection between [the defendant's] conduct and the offense of conviction is legally

21

irrelevant for the purpose of restitution."). The only relevant considerations for restitution purposes are "the elements of the offense of conviction and the specific conduct underlying these elements." United States v. Freeman, __ F.3d __, No. 12-4636, 2014 WL 185572, at *10 (4th Cir. Jan. 17, 2014) (internal quotation marks omitted).

Abdelbary was convicted of three counts of violating 18 U.S.C. § 152(3), which prohibits a person from "knowingly and fraudulently mak[ing] a false . . . statement under penalty of perjury . . . in or in relation to any case under title 11." He was also convicted of two counts of violating 18 U.S.C. § 1623, which prohibits a person from "knowingly mak[ing] any false material declaration" while under oath. The conduct underlying these convictions consisted of: (1) Abdelbary's fraudulent representation in his Statement of Financial Affairs that he did not transfer any assets during the two years preceding the bankruptcy petition; (2) his fraudulent statement, at a creditors meeting, that he had not transferred any assets to any family members; and (3) his fraudulent denial, at the same meeting, of having transferred any assets within the previous five years.

The district court did not make a specific finding that Abdelbary's fraudulent statements--i.e., his offense conduct-- caused Jordan Oil to incur attorneys' fees. Instead, the court

22

seemed to base the restitution award on a finding that Jordan Oil was harmed by the very fact that it had to participate in bankruptcy proceedings at all. For example, the court stated, "I'm thinking of it as a direct harm from the filing of this. . . . [Jordan Oil was] essentially dragged into bankruptcy court." J.A. 533-34.[1]

In my view, the district court improperly ordered restitution on the basis of Abdelbary's "relevant conduct"--pursuing a discharge in bankruptcy--rather than the specific conduct underlying his offense of conviction. See Freeman, 2014 WL 185572, at *6 ("[T]hese [restitution] statutes do not allow restitution for relevant conduct, a related offense, or a factually relevant offense, but rather the offense, which can only be read to mean the offense of conviction." (internal quotation marks omitted)).[2] There is nothing in the record to

---

[1] The majority makes a similar error, stating "the fees incurred were directly and proximately caused by Abdelbary's bankruptcy fraud because the fraud occurred in the context of Abdelbary's bankruptcy proceeding . . . ." Maj. Op. at 19 (emphasis added).

[2] Although the majority believes otherwise, Abdelbary challenged the district court's failure to find but-for causation at sentencing, see, e.g., J.A. 525-26, 528-29, and on appeal, see, e.g., Appellant's Br. at 13 (arguing that "[c]ausing Jordan Oil to incur attorney's fees was not an element of the offense," and emphasizing that "[a] restitution award may only compensate for a victim's actual damages resulting directly from an essential conduct element of the offense").

suggest that Abdelbary could not have filed for bankruptcy absent the fraudulent representations regarding his assets. And for all we know, Abdelbary may well have qualified for a discharge if he had not lied about the transferred assets. In that case, Jordan Oil still would have been "dragged into bankruptcy court" and incurred attorneys' fees to protect its judgment.

To drive the point home, consider 18 U.S.C. § 157, which criminalizes the filing of a bankruptcy petition in connection with a scheme to defraud.[3] Had Abdelbary been convicted of violating that provision, the government would have had an arguable case that all of the fees Jordan Oil incurred in the bankruptcy proceedings were attributable to Abdelbary, as the very filing of a bankruptcy petition would have constituted his offense conduct, and the entire proceedings would have been tainted. But Abdelbary was neither charged with nor convicted of violating 18 U.S.C. § 157, and, under this court's precedent, there is no basis for ordering restitution for conduct for which he was not convicted.

---

[3] "A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so . . . files a petition under title 11 . . . shall be fined under this title, imprisoned not more than 5 years, or both." 18 U.S.C. § 157(1).

24

I recognize that Abdelbary's untruthfulness may have exacerbated the fees Jordan Oil had to expend to defend its interests in bankruptcy. Perhaps Abdelbary's petition would have been dismissed much earlier had he not misrepresented his financial affairs, thus saving Jordan Oil time and expense. But the government never attempted to demonstrate a causal connection between Abdelbary's fraudulent statements and the aggravation of Jordan Oil's fees, and the district court made no factual findings to that effect.[4] In other words, the government failed to show that "even had [Abdelbary] been completely truthful about these matters, [Jordan Oil] would not have suffered the same harm." Freeman, 2014 WL 185572, at *10. Because the district court clearly erred when it found that Abdelbary's criminal conduct directly and proximately caused all of Jordan Oil's attorneys' fees, I would reverse that portion of the district court's judgment ordering Abdelbary to pay $84,079.35 in restitution.

I respectfully dissent.

---

[4] Jordan Oil also incurred fees representing the interests of other creditors during the bankruptcy proceedings. See J.A. 470 ("Jordan Oil . . . took the lead in objecting to Defendant's discharge for the benefit of itself and Defendant's other creditors. . . . [N]o other creditors objected to Defendant's discharge. Jordan Oil bore the burden and expense for the benefit of all . . . ."). I do not believe Abdelbary can be responsible for the fees Jordan Oil voluntarily incurred defending other creditors' debts.