**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 15-4811**

———————

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

        v.

CECELIA BELLE BRADLEY,

            Defendant - Appellant.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Bryson City.  Martin K. Reidinger, District Judge.  (2:14-cr-00006-MR-DLH-1)

———————

Argued:  May 9, 2017                    Decided:  May 24, 2017

———————

Before MOTZ, SHEDD, and DUNCAN, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Ross Richardson, Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Jill Westmoreland Rose, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Cecelia Belle Bradley pled guilty to Count VII of a seven count indictment stemming from an altercation on the Cherokee Indian Reservation in North Carolina. The district court ordered her to pay restitution to the hospital that treated two victims of the assault. Bradley appeals, arguing that neither federal law nor her plea agreement require her to pay restitution for both victims. For the reasons that follow, we affirm.

I.

On May 14, 2013, Bradley, her husband, her brother, and two other individuals drove to an area at the Mile High Campground in the Eastern Band of Cherokee Indians reservation. William Bird, Shirley Crowe, and several other people were grilling at the campground. A fight ensued, during which Bradley beat Crowe with a stick (or possibly a bat). At the same time, Bradley's brother, Moses Reed, stabbed Bird. Crowe and Bird were airlifted to the hospital, where Bird was admitted and Crowe was treated and released. The police later apprehended Bradley and her associates and recovered a wooden bat, pool stick, and two knives. Reed admitted to stabbing Bird.

A federal grand jury indicted Bradley on one count of attempted murder and six counts of assault. Of those counts, only Count VII involved the assault on Crowe. The remainder concerned the assault on Bird. Bradley ultimately agreed to plead guilty to Count VII, and signed a plea agreement in which she agreed "that the *victim* sustained bodily injury pursuant to U.S.S.G. § 2A2.2 (b)(2)(3)(A)." (emphasis added). Bradley also agreed:

3

> To pay full restitution, regardless of the resulting loss amount, to all *victims* directly or indirectly harmed by the defendant's relevant conduct, including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an offense under 18 U.S.C. §§ 2259, 3663 or 3663A.

(emphasis added). Attached to the plea agreement is a factual basis that identified two victims, who are indisputably Bird and Crowe.

At sentencing, the Cherokee Indian Tribe asked for restitution to cover the medical bills of both Crowe and Bird. Bradley objected to paying Bird's bills, arguing that she had not caused his injuries. The Government argued that Bird's injuries constituted the result of relevant conduct and that the plea agreement included restitution for victims of relevant conduct. Bradley responded that she had only agreed to pay restitution to victims, and that Bradley was not a victim under the Victim and Witness Protection Act ("VWPA") or the Mandatory Victims Restitution Act ("MVRA").

The district court held that Bird's stabbing was relevant conduct and that Bradley acted in concert with Reed. The court sentenced Bradley to two years of supervised release and ordered her to pay $37,500.15 in restitution. This included $32,216.83 to cover Bird's medical bills. Bradley timely noted this appeal.

## II.

We review *de novo* "questions of statutory construction" and a "district court's interpretation of a plea agreement." *United States v. Abdelbary*, 746 F.3d 570, 574 (4th Cir. 2014); *United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007). We review a district court's findings of fact for clear error. *Abdelbary*, 746 F.3d at 574.

4

On appeal, Bradley argues that the restitution order is illegal because Bird is not a "victim" under the VWPA or the MVRA. She contends that she agreed to pay restitution to "victims" only. Finally, she maintains that, even if Bird is a victim, she did not directly or indirectly cause his injuries.[*]

Under the VWPA, a court may order restitution for non-victims "if agreed to by the parties in a plea agreement" and may order restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(1)(A), (a)(3). Under the MVRA, the district court shall order restitution "to persons other than the victim of the offense" if the parties agreed to it in a plea agreement. *Id.* § 3663A (a)(3). Accordingly, regardless of whether Bird is a "victim" for the purposes of either statute, the plea agreement controls. Thus, the dispositive question is whether the plea agreement provides for restitution for Bird's injuries.

"[P]lea bargains are essentially contracts." *Puckett v. United States*, 556 U.S. 129, 137 (2009). Therefore, "contract-law principles apply to the interpretation and enforcement of plea agreements." *United States v. Guevara*, 949 F.2d 706, 707 (4th Cir. 1991). Bradley's plea agreement explicitly defines "relevant conduct" to include

---

[*] At oral argument, Bradley presented a fourth argument, namely, that her plea agreement refers to "the victim," singular, in paragraph 7. To the extent this argument is not waived, *see United States v. Freeman*, 741 F.3d 426, 432 n.6 (4th Cir. 2014), it is unpersuasive. Paragraph 8 of the plea agreement contains the obligation to pay restitution; it refers to "victims," plural, and, as discussed below, specifically references other relevant conduct, both charged and uncharged, which includes conduct relating to the assault on Bird. Paragraph 7 of the plea agreement concerns the count of the indictment, and corresponding conduct, to which Bradley pled guilty, which included only the assault on Crowe.

5

"conduct pertaining to any dismissed counts or uncharged conduct." Counts I through VI of the indictment charged Bradley with attempting to murder Bird and assaulting Bird. Counts I through VI also charged Bradley with aiding and abetting the same conduct by Moses Reed and her other cohorts. The assault and attempted murder of Bird plainly constitutes conduct "pertaining to [ ] dismissed counts" and is therefore "relevant conduct" under the terms of the plea agreement.

Additionally, under U.S.S.G. § 1B1.3, relevant conduct also includes any "jointly undertaken criminal activity." A jointly undertaken criminal activity is a "criminal plan, scheme, endeavor, or enterprise undertaken . . . in concert with others, whether or not charged as a conspiracy." *Id.* "[I]n order to attribute to a defendant for sentencing purposes the acts of others in jointly-undertaken criminal activity, those acts must have been within the scope of the defendant's agreement and must have been reasonably foreseeable to the defendant." *United States v. Gilliam*, 987 F.2d 1009, 1012–13 (4th Cir. 1993).

The district court found that Bradley engaged in a "jointly undertaken criminal activity" with Moses Reed that involved the assault on Bird. Bradley stipulated in the factual basis that she and her cohort drove their SUV past a campground where Bird, Crowe, and others were having a barbecue. Their SUV reached the end of the road, turned around, and returned to the campground. Bradley and her cohort then exited the SUV. An argument broke out between the driver of the SUV and Crowe. At some point, Bradley's group brandished the weapons they used in the impending assault. Reed and others attacked Bird, and while Bradley denies joining in this attack, she admits to

6

assaulting Crowe. Bradley and the others then fled together in the SUV and discarded their weapons. From these facts, the district court found that Bradley and her cohort were acting in concert. The court certainly did not clearly err in so finding. Because the assault on Bird was either ongoing or had just concluded, it was "reasonably foreseeable" to Bradley when she, through her actions, agreed to join the altercation by assaulting Crowe. *Gilliam*, 987 F.2d at 1013. Nothing in the factual basis or any part of the record suggests that there was any meaningful separation between the assault on Bird and the assault on Crowe. On the contrary, the factual basis indicates that all the perpetrators arrived at and fled the scene together.

Bradley contends that our holding in *United States v. Squirrel*, 588 F.3d 207 (4th Cir. 2009), assists her. But *Squirrel* involved markedly different conduct and losses. The defendants in that case pled guilty to being accessories-after-the-fact to murder — the only charge on which they were indicted. *Id.* at 208. The district court, absent any motion from the Government, ordered them to pay $1.45 million in lost future wages to the victim's estate. *Id.* at 211. We reversed, reasoning that all of the defendants' conduct occurred after the victim died. *Id.* at 218. As such, the defendants had not acted in concert with the murderer when the loss occurred. *See id.* at 216, 218. Because none of the accessory-after-the-fact conduct "directly and proximately cause[d] any financial loss to . . . [the] estate," the conduct was not "relevant conduct" as required by the plea agreement. *Id.* at 218.

7

Here, by contrast, as Bradley stipulated in her plea agreement, she assaulted Crowe at roughly the same time and in the same place as Reed assaulted Bird, and the district court found that they attacked the victims in concert. Moreover, Bradley was initially indicted for the assault on Bird and the plea agreement defined relevant conduct as including "conduct pertaining to any dismissed counts." *Squirrel* does not preclude the district court's conclusion in this case.

In sum, the district court correctly interpreted the plea agreement to allow for restitution for Bird's injuries.

### III.

Accordingly, the judgment of the district court is

*AFFIRMED*.